UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RALPH E. LABUS, | ) ) ) | CASE NO. 5:11-cv-01856-JRA |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) | |

This matter appears before the Court on Defendant United States of America's ("United States") Motion for Summary Judgment. Plaintiff Ralph E. Labus has not filed an opposition to Defendant's Motion for Summary Judgment, and the time frame for doing so has lapsed. As such, Defendant's Motion is ripe for the Court's review. For the reasons stated below, the motion is GRANTED.

**I.**     **Factual Background and Procedural History**

In 2003, Plaintiff filed his 2002 federal income tax return indicating that he owed taxes in the amount of $18,083.00. For the 2002 income tax year, Plaintiff was credited for his withholding, three estimated tax payments, and a payment with his return in aggregate of $18,081.00. In April of 2009, the Internal Revenue Service ("the IRS") abated the taxes owed in the amount of $18,083.00 and issued Plaintiff a refund totaling $26,100.86, including interest for the 2002 tax year.

In 2004, Plaintiff filed his 2003 federal tax return indicating that he owed taxes in the amount of $26,564.00. For the 2003 income tax year, Plaintiff was credited for his withholding and three estimated tax payments in aggregate of $27,238.00. In 2004, the IRS issued Plaintiff a refund for $674.00 for the 2003 tax year. Plaintiff elected to apply this refund towards his next

1

year's taxes.

In 2005, Plaintiff filed his 2004 federal tax return indicating that he owed taxes in the amount of $17,216.00.  Plaintiff was credited with withholding his tax credit from the previous year and two estimated payments totaling $18,940.00 in all.  In 2005, the IRS refunded Plaintiff $1,724.00 for the 2004 tax year.

In 2006, Plaintiff filed his 2005 federal tax return indicating that he owed $10,121.00 in taxes.  Plaintiff was credited with withholding $13,799.00.  The IRS issued Plaintiff a refund of $3,678.00 for the 2005 tax year.  In 2009, the IRS abated Plaintiff's 2005 taxes in the amount of $10,121.00 and refunded Plaintiff $12,479.65 for the 2005 tax year.  This refund stemmed from the alleged theft loss deduction that is at issue in the present case, as detailed below.

Sometime around 2000, Plaintiff became involved with American Business Financial Services ("ABFS") after seeing advertisements in both local and national newspapers.  ABFS was a company that offered high interest notes to investors.  Plaintiff decided to invest with ABFS in order to make some retirement money.

Plaintiff made his first investment with ABFS in December of 2002 in the amount of $35,000 and a nine percent interest rate (note account number 151471428).  After receiving monthly interest checks on this initial investment, Plaintiff elected to invest more money in ABFS. In July of 2002, Plaintiff made two additional separate investments with ABFS in the amounts of $100,000 (note account number 151374643) and $75,000 (note account number 151635765).  In August of 2003, Plaintiff invested an additional $50,000 (note account number 150657994) with ABFS.  Plaintiff received monthly interest checks on each of his four investments.

In February of 2004, Plaintiff accepted an offer to be repaid on three of his unsecured

investment notes totaling $185,000 and either reinvest or convert half of the principal amounts into senior subordinated collateralized notes. Therefore, three of Plaintiff's notes were halved (note account numbers 151471428, 151374643, and 150657994) and he received $92,500.00 back after switching the other half of these notes into senior subordinated collateralized notes. Plaintiff kept his $75,000 investment note (note account number 151635765) as an unsecured note.

ABFS began defaulting on its obligations to investors sometime in 2004. On January 21, 2005, ABFS filed for Chapter 7 bankruptcy in the United States Bankruptcy Court in Delaware. Plaintiff was aware that ABFS filed for bankruptcy soon after it did. Plaintiff was also aware that Mr. George Miller, the trustee of the bankruptcy, was attempting to get money back for investors in ABFS.

In March of 2005, Plaintiff became involved in a class action lawsuit that was filed against ABFS in the United States District Court for the Eastern District of Pennsylvania on behalf of allegedly defrauded investors. On February 22, 2011, the district court entered an order of settlement that would award investors with some return of their investment. Plaintiff initially claimed $264,036.47 in losses in the class action case, but this amount was adjusted to $171,036.47 in light of Plaintiff's decision to switch half of three unsecured notes ($92,000) into senior subordinated collateralized notes. Despite a letter explaining his ability to contest the amount or inquire as to why his claim was partially rejected, Plaintiff did not challenge the $171,036.47 amount. In March of 2010, Plaintiff received a check for $5,527.34 from the class action lawsuit filed against ABFS. As of July 12, 2012, Plaintiff believes that it is possible that he could still receive more money from his investment in ABFS.

On July 4, 2008, Plaintiff filed an Amended U.S. Individual Tax Return (Form 1040X)

for the years 2002, 2003, 2004, and 2005. That same day Plaintiff filed an application for Tentative Refund (Form 1045) under 26 U.S.C. §6411, electing to carry back a theft loss allegedly suffered in 2005, for three years, to 2002, 2003, and 2004. Plaintiff's application asserted a loss of $205,943.00 for the 2005 income tax year. The application also claimed tentative refunds in the amount of $45,767.00.

In March of 2011, the IRS disallowed Plaintiff's claim for a refund for 2003 and 2004 alleging that no loss was deductible for 2005. Thus, no carry backs to 2003 and 2004 were permitted. However, the IRS admits that they mistakenly issued the Plaintiff's claimed refunds for 2005 (the loss year) and 2002 (the first carry back year).

Plaintiff is suing the United States Government alleging that he is entitled to a deduction in the amount of $262,986.00 on his 2005 tax return due to a theft loss under Internal Revenue Code §165. Moreover, Plaintiff asserts that the §165 theft loss resulted in a net operating loss that he is entitled to carry back to the 2002, 2003, and 2004 tax years, and the resulting net operating loss carry back deductions in those years generated overpayments in aggregate of $27,684.00 (interest included in sum) in tax for those years.

## II. Law & Analysis

### a. Summary Judgment Standard

Summary judgment creates a burden-shifting framework. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). First, a party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.; Fed. R. Civ. P. 56(a). If the moving party satisfied this burden, then the party nonmoving party must demonstrate to the Court that there are facts genuinely in dispute, and must do so by citing to the record. Fed. R. Civ. P. 56(c)(1)(a); *See Anderson*, 477 U.S. at 250.

The nonmoving party must show specifically "that there is a genuine issue for trial." *Id*. The Sixth Circuit has long held that "mere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.,* 351 F.3d 240, 253 (6th Cir. 2003), citing *Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273, 1274 (6th Cir. 1974).

Where, as here, a motion for summary judgment is unopposed, the district court at a minimum must review the motion to ensure that the moving party has satisfied its initial burden of demonstrating the absence of a genuine issue of material fact. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must intelligently and carefully review the legitimacy of the motion, considering the possibility of evidentiary misstatements by the moving party and keeping in mind the context in which the evidence arose. *Id.*

Notwithstanding the foregoing, the district court properly relies on the facts provided by the moving party once the court is satisfied that the movant has not misrepresented the facts as established by the record as a whole. *Id.* at 404-09. The Sixth Circuit has held that nothing in the Federal Rules of Civil Procedure or case law supports an argument that the district court must conduct its own probing investigation of the record in order to discover an issue of material fact when a summary judgment motion is unopposed. *Id.* at 405-06. Thus, the district court is justified in relying on uncontested facts set forth in a summary judgment motion. *Id.* at 404-09.

After reviewing Defendant's Motion for Summary Judgment, this Court believes that Defendant has accurately interpreted and cited the appropriate statutes, regulations, and case law governing "theft loss" deductions. Defendant correctly points out that the types of deductions allowable under 26 U.S.C. §165(a) for individual taxpayers includes losses that "arise from fire, storm, shipwreck, or other casualty, or from theft." 26 U.S.C. §165(c)(3). Under the Treasury regulations, the term "theft" for purposes of claiming a deduction under §165(a), (c) "shall be

deemed to include, but shall not necessarily be limited to, larceny, embezzlement, and robbery." Treas. Reg. §1.165-8(d). Moreover, whether the claimed loss constitutes a "theft" that is deductible under §165(a) depends upon the law of the jurisdiction where the loss was sustained. *See Bagur v. Commissioner,* 603 F.2d 491, 501 (5th Cir.1979). Thus, in order to claim a theft loss deduction under §165(a), (c), the taxpayer must prove that the loss resulted from a "theft" (or larceny, embezzlement, or robbery) as defined by the law of the state where the loss occurred. *Lombard Bros., Inc. v. United States*, 893 F.2d 520, 523 (2d Cir. 1990). For the purposes of this case, Ohio State law governs Plaintiff's theft loss claim. Although ABFS was incorporated in the state of Delaware, Plaintiff made his investments while he resided in Ohio and suffered his alleged loss while living in Ohio.

Ohio Revised Code ("Ohio R.C.") § 2913.01(K)(1) lists several statutory offenses that are deemed to be "theft offenses." One such statutory offense, Ohio R.C. § 2913.02, explicitly defines "theft" and "aggravated theft." Ohio R.C. § 2913.02 provides, in part, that:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> > (1) Without the consent of the owner or person authorized to give consent;
> >
> > (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
> >
> > (3) By deception;
> >
> > (4) By threat.

Defendant rightfully points out that as used in § 2913.02(A), the word "deprive" means to (1) withhold another's property permanently; (2) dispose of property; or (3) to use money, property, or services "with the purpose not to give proper consideration in return for the money, property or services…" Ohio R.C. § 2913.01(C). The term "deception," as used in § 2913.02(A)(3),

6

means "knowingly deceiving another or causing another to be deceived by any false or misleading representation," or by conduct that creates a "false impression." Ohio R.C. § 2913.01(A). To establish a theft by deception, it must be proven "that the accused engaged in a deceptive act to deprive the owner of possession of property or services," and "that the accused's misrepresentation…actually caused the victim to transfer property to the accused." *State v. Edmondson*, 750 N.E.2d 587, 592 (Ohio 2001).

In the present case, the record is devoid of any evidence that would suggest that ABFS possessed the criminal intent to "deprive" Plaintiff of his investment money without any plan of paying back the principal investments. Instead, the record reflects that ABFS sent Plaintiff monthly interest checks from his four investments for some time prior to filing for Chapter 7 bankruptcy. This fact alone contradicts Plaintiff's contention in his complaint that ABFS acted with the criminal intent to deprive him of his investment money.

Moreover, there is no evidence in the record to support Plaintiff's contention that ABFS made any fraudulent misrepresentations on which Plaintiff relied in making his investment decisions, nor is there any evidence that ABFS acted with criminal intent to deprive Plaintiff of his money. As such, outside of mere conclusory statements, there is no evidence to support Plaintiff's assertion that ABFS "deceived" Plaintiff in order to deprive him of his investment money. Thus, any claim of "theft" made under § 2913.02(A)(3) cannot be maintained.

Lastly, because Plaintiff willfully invested with ABFS, there is no support for an assertion that ABFS deprived Plaintiff of his investment money without his consent. In addition, no evidence in the record supports a claim that ABFS transcended the scope of Plaintiff's consent in order to deprive Plaintiff of his investment money. There is also no evidence in the record showing that ABFS deprived Plaintiff of his investment money by means of threat or

intimidation. For these reasons, Plaintiff has not supported a claim of "theft" as to §§ 2913.02(A)(1), (2), or (4).

Because Plaintiff is unable to show by citing to the record that his claimed investment loss in ABFS was the result of a "theft" as defined by Ohio State law, all other remaining issues identified by Defendant are rendered moot and are not addressed by this Court.

### III. Conclusion

Based upon the above, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's claims are dismissed.

IT IS SO ORDERED.

DATE: September 27, 2012          */s/ John R. Adams*_____
                                  Judge John R. Adams
                                  UNITED STATES DISTRICT COURT